IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

ELK RUN COAL COMPANY, INC.,
31754 Coal River Road
Sylvester, WV 25193,

INDEPENDENCE COAL COMPANY, INC.,
Old Eagle Energy Location
HC 80 Box 24
Gordon, WV 25093,

MAMMOTH COAL COMPANY,
5493 Kellys Creek Road
Mammoth, WV 25132,

MARTIN COUNTY COAL CORPORATION,
3185 Middle Fork Wolf Creek Road
Inez, KY 41224,

SPARTAN MINING COMPANY,
300 Morgan Massey Drive
Julian, WV 25529, AND

WHITE BUCK COAL COMPANY,
Route 20
Leviasy, WV 26670,

      Plaintiffs

v.

                                      Civil Action No. _____

UNITED STATES DEPARTMENT OF LABOR,
200 Constitution Ave., NW
Washington, DC 20210;

MINE SAFETY AND HEALTH
ADMINISTRATION (MSHA),
1100 Wilson Blvd, 21st Floor
Arlington, VA 22209;

KEVIN STRICKLIN, ADMINISTRATOR,
MSHA DIVISION OF COAL MINE SAFETY
AND HEALTH,
1100 Wilson Blvd, Room 2424
Arlington, VA 22209

**ROBERT HARDMAN, DISTRICT MANAGER,**
**MSHA COAL DISTRICT 4,**
**100 Bluestone Road**
**Mt. Hope, WV 25880, AND,**

**NORMAN PAGE, DISTRICT MANAGER,**
**MSHA COAL DISTRICT 6,**
**100 Fae Ramsey Lane**
**Pikeville, KY 41501,**

      **Defendants.**

---

## COMPLAINT

---

### NATURE OF ACTION

1.    This civil action is brought under the Due Process Clause of the Fifth Amendment to the United States Constitution, the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the inherent powers of the Court to review *ultra vires* actions of federal government agencies and officials.

2.    Plaintiffs Elk Run Coal Company, Inc., Independence Coal Company, Inc., Mammoth Coal Company, Martin County Coal Corporation, Spartan Mining Company, and White Buck Coal Company are underground coal mine operators regulated by the Federal Mine Safety and Health Act of 1977 ("Mine Act"), as enforced by the Mine Safety and Health Administration ("MSHA"), an agency within the U.S. Department of Labor.

3.    The Mine Act requires underground coal mine operators to, among other things, control, dilute and/or remove methane, respirable coal dust, and other noxious fumes from the underground mine atmosphere to ensure miners' safety and health. It also requires those mine operators to develop and follow ventilation plans which further define how those objectives are to be accomplished. These plans must be specific to the conditions at the mine for which the plan has

been submitted, and all such plans must be approved by MSHA before they can be implemented by the operators at their mines because the Mine Act prohibits mines from operating at all until MSHA approves the ventilation plan.

4.      The Mine Act does not provide any dispute-resolution mechanism in the event an operator and MSHA cannot agree on the terms of a ventilation plan.  Nor does the Mine Act or regulations promulgated by MSHA set any limit on the time for MSHA to review and approve or deny a submitted ventilation plan.  Operators are therefore dependent on MSHA to act objectively and in good faith in the plan-approval process.  When MSHA fails to act in good faith – either through unreasonable delay in its consideration of a ventilation plan or by conditioning approval on some demand that is not reasonably related to the safety or health of miners at the operator's mine – an operator has no recourse under the Mine Act and is denied due process of law as guaranteed by the Fifth Amendment to the U.S. Constitution.

5.      As set forth below, the Defendants have violated the Plaintiffs' due process rights under the Fifth Amendment in just that fashion – they have unreasonably refused to approve the Plaintiffs' ventilation plans in a number of circumstances on a variety of arbitrary grounds.  One frequently repeated example of the Defendants' arbitrary and unlawful conduct is their refusal to approve the Plaintiffs' use of a key piece of mining equipment that protects miners' health and safety:  scrubbers attached to mining equipment that both (1) "scrub the air" to remove harmful respirable coal dust from the mine atmosphere in order to protect the health of the Plaintiffs' miners who would otherwise be exposed to that respirable coal dust, and the consequent enhanced risk of Black Lung Disease; and (2) help dilute and remove potentially dangerous methane gas from the working face of the coal mine.  The Defendants' basis for not approving the use of such scrubbers improperly hinges on generic assumptions about underground coal

mining conditions, and not the conditions at any of the Plaintiffs' specifically affected coal mines.

6.    The actions of the Defendants complained of in this Complaint were unconstitutional, arbitrary and capricious, contrary to law, and *ultra vires*, and cannot stand.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this civil action under 28 U.S.C. § 1331 because the action arises under the U.S. Constitution and other federal laws.  Because this action presents claims that are not merely wholly collateral to, but in fact completely independent of, the administrative review provisions of the Mine Act, and indeed for which no review of any kind is provided by the Mine Act, it does not suffer from the jurisdictional defects found to exist in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

8.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because one or more of the Defendants resides in this judicial district.

9.    The United States, including its departments and agencies, is not immune to suit for actions arising under the U.S. Constitution, and, in the APA, has waived sovereign immunity from suit seeking relief other than damages.

10.    Individual officials of the United States or its departments or agencies are not immune to suit for *ultra vires* actions.

## PARTIES

11.    The Plaintiffs are underground coal mine operators as that term is defined in the Mine Act, 30 U.S.C. § 802(d).

12.    Plaintiff Elk Run Coal Company, Inc., operates underground coal mines, including the Hunter Peerless Mine, the Seng Creek Powellton, and the Shonk Powellton No. 3 Mine.

13.     Plaintiff Independence Coal Company, Inc., operates underground coal mines, including the Cook Mine and the Allegiance Mine.

14.     Plaintiff Mammoth Coal Company operates underground coal mines, including the Alloy Powellton Mine, the Slab Camp Mine, and the Shadrick 5 Block Mine.

15.     Plaintiff Martin County Coal Corporation operates underground coal mines, including the Voyager Mine and the White Cabin Mine.

16.     Plaintiff Spartan Mining Company operates underground coal mines including the Hatfield Energy Mine and the Road Fork No. 51 Mine.

17.     Plaintiff White Buck Coal Company operates underground coal mines, including the Pocahontas Mine, and the Hominy Creek Mine.

18.     Defendant U.S. Department of Labor is a federal executive department. It resides in the District of Columbia and may be found throughout the country.

19.     Defendant Mine Safety and Health Administration ("MSHA"), a federal agency within the U.S. Department of Labor, is responsible for administering and enforcing the Mine Act and the regulations that it promulgates thereunder. Its headquarters is located in Arlington, Virginia and it may be found throughout the country.

20.     Defendant Kevin Stricklin is the Administrator for MSHA's Division of Coal Mine Safety and Health, headquartered in Arlington, Virginia. As the Administrator, Mr. Stricklin is responsible for the enforcement of the Mine Act, MSHA's regulations, and MSHA's policies and procedures at the nation's coal mines. The Plaintiffs bring suit against Mr. Stricklin in both his official and individual capacities.

21.     Defendant Robert Hardman is the District Manager of MSHA Coal District 4, headquartered in Mt. Hope, West Virginia. As the District Manager, Mr. Hardman is responsible

for the enforcement of the Mine Act, MSHA's regulations, and MSHA's policies and procedures at the coal mines within MSHA Coal District 4, which includes many of the Plaintiffs' mines affected by the conduct complained of in this Complaint. Mr. Hardman reports directly to Mr. Stricklin. The Plaintiffs bring suit against Mr. Hardman in both his official and individual capacities.

22.     Defendant Norman Page is the District Manager of MSHA Coal District 6, headquartered in Pikeville, Kentucky. As the District Manager, Mr. Page is responsible for the enforcement of the Mine Act, MSHA's regulations, and MSHA's policies and procedures at the coal mines within MSHA Coal District 6, which includes at least two of the Plaintiffs' mines affected by the conduct complained of in this Complaint. Mr. Page reports directly to Mr. Stricklin. The Plaintiffs bring suit against Mr. Page in both his official and individual capacities.

## GENERAL ALLEGATIONS

### Mine Act Background

23.     The Mine Act regulates every mine in the United States, regardless of mine type (i.e., underground or surface) or resource mined (i.e., coal, metals, and non-metal minerals alike). Mine Act §§ 3(h) & 4, 30 U.S.C. §§ 802(h) & 803.

24.     By its own terms, the Mine Act established certain mandatory mine safety and health standards ("mandatory standards"), the violation of which can result in, inter alia, mandatory civil penalties assessed against mine operators, civil penalties assessed against individual directors, officers and other agents of corporate operators, and criminal prosecution of operators or individuals. See Mine Act §§ 104, 110, 30 U.S.C. §§ 814, 820.

25.     Furthermore, MSHA is authorized by the Mine Act (§ 101(a), 30 U.S.C. § 811(a)) to promulgate additional or enhanced mandatory standards, with the same legal force and effect as the mandatory standards established by the Mine Act itself.

26.     If MSHA chooses to promulgate a mandatory standard, it must adhere to the procedure set forth in Mine Act § 101(a), which directs MSHA to follow the notice-and-comment rulemaking procedures of the APA in addition to other, more stringent procedural requirements.

27.     Mine Act § 101(a)(9), 30 U.S.C. § 811(a)(9), prohibits a new mandatory standard from reducing the health or safety protections of an existing mandatory standard.

28.     Subchapter B of MSHA's regulations, 30 C.F.R. Parts 5-36 (some of which are blank), sets out detailed regulations on the MSHA safety certification and approval procedures required for various pieces or types of equipment used in the underground mining environment.

29.     Despite its applicability to every type of mine in the country, the Mine Act by its terms more comprehensively regulates underground coal mining than any other type of mining.

30.     Among other things, the Mine Act (§ 303(o), 30 U.S.C. § 863(o)) requires every operator of an underground coal mine to develop and follow a ventilation plan that is "suitable to the conditions and the mining system of the coal mine," and further requires that each such plan be approved by MSHA and then reviewed by MSHA and the operator at least every six months to determine whether the plan continues to be "suitable" to the current conditions of the mine.

31.     The purpose of a ventilation plan is to control, dilute, and/or remove methane, respirable coal dust, and other noxious fumes from the underground mine atmosphere.

32.     The Mine Act, by its terms as well as decisions rendered thereunder – administrative and judicial alike – requires that every ventilation plan be tailored to the specific conditions of the mine for which the plan was submitted.   This is why the Mine Act places responsibility for developing and

implementing the ventilation plan on the mine operator: unlike mandatory standards of national applicability, plan provisions must suit the specific conditions of the mine at which they are to be applied.

33.     Accordingly, it is impermissible for MSHA to insist upon plan provisions that are not necessitated by the specific conditions or mining system at the mine for which a given ventilation plan was submitted.

34.     Moreover, the Mine Act does not grant MSHA the authority to dictate plan provisions. Its approval authority is limited to reviewing the operator's ventilation plan for consistency with prudent mining engineering and safety and health practices. MSHA may not lawfully deny approval of a ventilation plan because it prefers another way to address one or more plan subjects when the plan as developed by the operator is consistent with prudent mining engineering and does not reduce the safety or health of the miners.

35.     The terms of an operator's ventilation plan, once approved by MSHA, become mandatory standards in their own right with respect to the mine for which the plan has been approved, with the same legal force and effect as the mandatory standards established by the Mine Act and MSHA regulations.

36.     There is no provision in the Mine Act, however, that requires MSHA to act on a ventilation plan submitted by an operator – be it by approving or disapproving the operator's proposed plan – within a certain period of time, if at all.

37.     Moreover, the Mine Act contains no procedure for resolving disputes between an operator and MSHA in the event the parties reach an impasse regarding one or more plan provisions, and it provides no recourse to a mine operator if MSHA refuses to act on a submitted plan or adopts an arbitrary position with respect to the plan that is not based on the specific conditions or mining system at the mine or which, if implemented by the operator, could reduce the health or safety of the miners. If MSHA fails to approve a proposed plan provision submitted by an operator, demands that the operator omit from its plan measures or

equipment designed to protect miners' health or safety, or demands that the operator add provisions otherwise opposed by the operator, nothing in the Mine Act prevents MSHA from denying or revoking approval of the ventilation plan and effectively shutting down the coal mine, since a mine cannot operate without an approved ventilation plan.

38.     MSHA's implementing regulations for ventilation plans, 30 C.F.R. § 75.370, *et seq.*, elaborate on the necessary contents of a ventilation plan and provide that the approval or denial of a plan shall be stated in writing, and that in the event of a denial MSHA shall specify the deficiencies in writing and provide the operator with an opportunity to discuss the deficiencies with the district manager, but those regulations do not provide for any type of dispute resolution and do not impose any time limit on MSHA's review of the operator's plan.

39.     In other words, the Mine Act places operators at the mercy of MSHA with respect to the implementation of their plans.  Disputes can arise over any number of plan issues, and as a general matter operators and MSHA have a duty to negotiate their differences in good faith.  If an operator does not conform its proposed ventilation plan to prudent mining engineering and safety and health principles, MSHA is not obligated to approve the plan.  But there is no similar constraint on MSHA – if MSHA does not act reasonably, in good faith, and in a timely manner in approving an operator's sound ventilation plan, not only is the operator not allowed to operate its mine, but it has no recourse under the Mine Act for obtaining relief.

40.     The lack of relief available to operators in situations in which MSHA either fails to act upon a ventilation plan submitted for approval or does not act reasonably, in good faith, and in a timely manner in approving the operator's plan, stands in stark contrast to the comprehensive review process established by the Mine Act for challenging MSHA-issued citations and orders for alleged statutory and regulatory violations by mine operators.

41.     Disputes regarding the existence of a violation or the resulting penalty are heard by the Federal Mine Safety and Health Review Commission ("Commission"), an independent agency established by the Mine Act, *see* Mine Act § 113, 30 U.S.C. § 823, typically not until long after the triggering citation or order has been issued and the alleged violation has been abated.  Contests are heard in the first instance by a Commission administrative law judge.  The Commission exercises discretionary review over decisions of administrative law judges and final decisions (whether of the Commission itself or of an administrative law judge for which review was not granted) are subject to judicial review in the appropriate federal circuit court of appeals.

42.     Notwithstanding this comprehensive and independent administrative review scheme to hear disputes arising from the issuance of citations and orders, the Mine Act does not provide a dispute resolution procedure to resolve disputes over ventilation plans submitted for approval or recourse if MSHA acts arbitrarily, unlawfully, or *ultra vires* with respect to such plans.  Simply put, MSHA is free, over the mine operator's objection, to do literally nothing in response to a ventilation plan submitted for its approval, or may adopt a blanket and arbitrary position that does not take into consideration the specific conditions and mining system of the coal mine for which the plan has been submitted or the safety and health of that mine's miners, and the Mine Act does not provide any means by which such plan disputes can be heard, either by an administrative tribunal such as the Commission, or a federal court.

43.     MSHA is aware of its apparently vast authority in this area, and has leveraged it through a pattern of economic arm twisting and regulatory coercion effectively to compel operators' acceptance of MSHA-required changes to operators' ventilation plans that the operators themselves actually oppose, as the price of not being put out of business for want of an MSHA-approved plan.  Operators are thus denied the right to ventilate their mines as they believe best for miner safety and health within the limits of the law and prudent mining engineering methods and practices.

44.     Thus, where MSHA adopts a generic view of what provisions should or should not be in a ventilation plan without due regard for the specific conditions and mining system of the coal mine for which the plan has been submitted or the safety and health of that mine's miners, and where – if adopted by the operator – MSHA's required plan provision (or omission of a provision) would diminish the health or safety protections afforded to the miners under the plan submitted by the operator for approval, an operator is left with two equally unacceptable choices: (i) do not implement MSHA's arbitrary and capricious demand and therefore not be allowed to operate its coal mine; or (ii) implement MSHA's arbitrary and capricious demand and be allowed to operate, but pursuant to a ventilation plan that does not allow the operator's chosen safety and health protections for its miners.  Operators are left to make this choice without any right of review of MSHA's actions and position by a neutral party, be it the Commission or a federal court.

### Conduct at Plaintiffs' Mines Giving Rise to This Cause of Action

45.     On multiple occasions, the Defendants, based on generic beliefs about the adequacy of certain provisions, rather than on the specific conditions or mining system at the given mine, have refused to approve or even act upon ventilation plans submitted for approval by the Plaintiffs' mines.  MSHA's actions establish a ventilation plan review pattern and practice that is unlawful and *ultra vires*.  What is more, those actions diminish the health and safety protections afforded the miners.

46.     In particular, the Defendants have established a pattern and practice of refusing to allow the Plaintiffs' mines to implement any number of sound practices that are suitable to the conditions and mining systems at their respective mines, including, *inter alia*, (i) the use of certain ventilation control devices known as scrubbers, (ii) the right to design their ventilation systems to *blow* fresh air across the working coal face (*i.e.*, blowing ventilation systems) instead of having to rely on, as the Defendants demand, inductive ventilation systems that *draw* fresh air across the working coal face in far less quantities (*i.e.*, exhausting ventilation systems); (iii) the right to ventilate the "gob" areas (*i.e.*, inaccessible mined out areas) of their

mines without artificial ventilation controls, as the Defendants demand, that restrict air flow across the gob and make the mine less safe for the miners by failing to dilute potential accumulations of methane and other gas-air mixtures to the degree that the Plaintiffs' preferred ventilation methods would; and (iv) the right to use methods of evaluating the effectiveness of the respective mines' bleeder entries (*i.e.*, tunnels utilized as air courses to dilute and carry away methane and other noxious fumes) that do not require sending mine examiners into potentially hazardous areas of the mines where it would be unnecessary to do so but for the Defendants' demands to do so.

47.     The Defendants' refusal to allow the Plaintiffs to use, or to continue to use, scrubbers at the mines identified in this Complaint is particularly troubling.  Scrubbers are ventilation control devices that attach to machines used to mine coal in the Plaintiffs' underground coal mines known as a "continuous mining machines," or simply "continuous miners."  Scrubbers – so named because they "scrub" the mine atmosphere by removing respirable coal dust – have proven in studies conducted by the National Institute for Occupational Safety and Health ("NIOSH") to be effective at reducing the amount of respirable coal dust to which the miners would otherwise be exposed.  Scrubbers can also help dilute methane in the area where the continuous miner is working.

48.     Minimizing respirable coal dust is important because overexposure has been shown to cause, among other things, coal workers' pneumoconiosis, or Black Lung Disease, which can be a disabling or even fatal lung disease.  Diluting methane is always important in underground coal mines because, at certain concentrations, methane-air mixtures are highly combustible and can pose great safety risks to miners.

49.     Scrubbers have long been used by the Plaintiffs at their mines to reduce respirable dust exposures and help with the dilution of methane and are fully approved for use under MSHA's regulations, 30 C.F.R. Subpart B.

50.     The Defendants have refused to approve ventilation plans providing for the use of scrubbers based on reasons that have nothing to do with the specific conditions or circumstances at the given mine.

51.     Specifically:

- Plaintiff Elk Run Coal Company, Inc. has been denied the right to use scrubbers at its Hunter Peerless, Seng Creek Powellton, and Shonk Powellton No. 3 Mines;

- Plaintiff Independence Coal Company, Inc. has been denied the right to use scrubbers at its Cook and Allegiance Mines;

- Plaintiff Mammoth Coal Company has been denied the right to use scrubbers at its Alloy Powellton, Slab Camp, and Shadrick 5 Block Mines;

- Plaintiff Martin County Coal Corporation has been denied the right to use scrubbers at its Voyager and White Cabin Mines;

- Plaintiff Spartan Mining Company has been denied the right to use scrubbers at its Hatfield Energy and Road Fork No. 51 Mines;

- Plaintiff White Buck Coal Company has been denied the right to use scrubbers at its Pocahontas and Hominy Creek Mines.

52.     In no such circumstance at any of these mines have the Defendants provided or articulated a rational, non-arbitrary reason for denying the Plaintiffs the right to use scrubbers in light of the conditions and mining systems at their affected mines.

53.     Moreover, the health consequences of the Defendants' pattern and practice of not allowing the Plaintiffs' mines to use scrubbers are significant.  Scrubbers have been shown to be extremely effective

at removing respirable coal dust from the mine atmosphere, and thus reducing miners' exposure to respirable coal dust, overexposures to which have been shown to cause Black Lung Disease.

54.     Indeed, MSHA long ago adopted the policy – upheld in court when challenged – that all respirable coal dust violations are presumed to be "significant and substantial." In Mine Act parlance, this means, among other things, that each exceedance of MSHA's respirable coal dust standard – *i.e.*, the maximum average concentration of respirable coal dust in the mine to which a miner may lawfully be exposed – is deemed to contribute to a discrete health hazard that is reasonably likely to result in an illness to each miner exposed. By not allowing the Plaintiffs to use the scrubbers, the Defendants' own conduct is increasing the likelihood that the Plaintiffs' miners will be sickened by Black Lung Disease, *inter alia*.

55.     Every action of MSHA described and complained of in this Complaint was carried out at the direction or with the approval of Defendants Stricklin, Hardman, and/or Page, acting under color of their authority on behalf of the Department of Labor and MSHA.

## FIRST CLAIM FOR RELIEF
### Due Process Clause, Fifth Amendment to the U.S. Constitution – Procedural Due Process

56.     The Plaintiffs re-allege and incorporate by reference paragraphs 1-55.

57.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law."

58.     As described below, the Mine Act violates the Plaintiffs' constitutionally protected rights by not assuring due process of law is provided in the situations, described in this Complaint, where the Plaintiffs are deprived of certain liberty and property interests.

59.     The Plaintiffs have constitutionally protected interests in, *inter alia*:

- a safe and healthy work force (*i.e.*, their miners), for both their own sake and the sake of their miners, and such interests are directly affected by the

suitability of their ventilation plans to the conditions and mining systems at their respective mines – if their ventilation plans are not suitable to the circumstances found at a particular mine, the Plaintiffs cannot be certain they are doing all they could to protect the safety and health of their miners;

- the economic viability of their mining operations, and such interests are directly affected by their obtaining timely MSHA approval of their ventilation plans – without the Defendants' approval, the Plaintiffs' mines cannot operate, and their employees will be put out of work; and

- the right to develop and implement their own ventilation plans, provided they are consistent with prudent mining engineering and safety and health practices, suitable to the conditions and mining systems at their respective mines, and such interests are directly affected by the Defendants' arbitrary conduct such as refusing to approve a ventilation plan that is consistent with prudent mining engineering and safety and health practices suitable to the conditions and mining systems at those mines.

60.     In general, "due process" requires that a party be given a hearing before being deprived of a liberty or property interest by the federal government.  In certain exceptional cases, where it is in the public interest to do so, the federal government may deprive a party of its liberty or property interests in advance of a hearing, but only where the government affords the aggrieved party post-deprivation process that would make the aggrieved party whole if the government's action were shown to have lacked a proper basis.  Such process typically means a hearing at which the legal basis for the government's action can be evaluated, challenged, and judged, and the aggrieved party made whole if it prevails.

61.     When in the course of a ventilation plan approval process MSHA refuses to approve the Plaintiffs' ventilation plans, or conditions approval of such plans on arbitrary grounds, the Plaintiffs are deprived of their constitutionally protected interests in a safe and healthy workforce, the economic viability of their operations, and the right to develop and implement ventilation plans suitable to their particular mine.

62.     The Mine Act does not provide for any dispute-resolution procedure with respect to ventilation plan approvals in the event the Plaintiffs and MSHA reach an impasse regarding one or more plan provisions.  Nor does the Mine Act provide any recourse to the Plaintiffs when MSHA refuses to approve a submitted plan or adopts an arbitrary position with respect to the plan that is based on generic beliefs unrelated to the specific conditions or mining system at the mine or that, if implemented by the Plaintiffs, would jeopardize the health or safety of the miners.  In other words, the Mine Act affords no due process protections to the Plaintiffs with respect to the ventilation plan approval process and any disputes arising from that process between the Plaintiffs and the Defendants – be they pre- or post-deprivation protections of the Plaintiffs' liberty and property interests.

63.     Accordingly, in the circumstances described above, the Mine Act violates the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

### SECOND CLAIM FOR RELIEF
### Declaratory Judgment, 28 U.S.C. § 2201

64.     The Plaintiffs re-allege and incorporate by reference paragraphs 1-55.

65.     The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare the Plaintiffs' legal rights where an actual controversy exists.

66.     As stated above, an actual controversy exists between the Plaintiffs and the Defendants to this dispute within the jurisdiction of this Court.

67. For the reasons stated above, the Plaintiffs are entitled to a declaration that the Mine Act fails to provide them with due process in situations where, as is the case complained of in this Complaint, the Defendants refuse to approve a submitted plan or adopts an arbitrary position with respect to the plan for reasons that are not related to the specific conditions or mining system at the mine or that, if implemented by the operator, would not improve or could jeopardize the health or safety of the miners.

## THIRD CLAIM FOR RELIEF
**Due Process Clause, Fifth Amendment to the U.S. Constitution – Procedural Due Process**

68. The Plaintiffs re-allege and incorporate by reference paragraphs 1-55.

69. The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." As described below, the Defendants have violated the Plaintiffs' constitutionally protected rights by depriving the Plaintiffs of certain liberty and property interests without due process of law.

70. The Plaintiffs have constitutionally protected interests in, *inter alia*:

- a safe and healthy work force (*i.e.*, their miners), for both their own sake and the sake of their miners, and such interests are directly affected by the suitability of their ventilation plans to the conditions and mining systems at their respective mines – if their ventilation plans are not suitable to the circumstances found at a particular mine, the Plaintiffs cannot be certain they are doing all they could to protect the safety and health of their miners;

- the economic viability of their mining operations, and such interests are directly affected by their obtaining timely MSHA approval of their ventilation

plans – without the Defendants' approval, the Plaintiffs' mines cannot operate, and their employees will be put out of work; and

- the right to develop and implement their own ventilation plans, provided they are consistent with prudent mining engineering and safety and health practices, suitable to the conditions and mining systems at their respective mines, and such interests are directly affected by the Defendants' arbitrary conduct such as refusing to approve a ventilation plan that is consistent with prudent mining engineering and safety and health practices suitable to the conditions and mining systems at those mines.

71.    In general, "due process" requires that a party be given a hearing before being deprived of a liberty or property interest by the federal government. In certain exceptional cases, where it is in the public interest to do so, the federal government may deprive a party of liberty or property in advance of a hearing, but only where the government affords the aggrieved party post-deprivation process that would make the aggrieved party whole if the government's action were shown to have lacked a proper basis. Such process typically means a hearing at which the legal basis for the government's action can be evaluated, challenged, and judged, and the aggrieved party made whole if it prevails.

72.    The Mine Act affords no such protections to operators with respect to the ventilation plan approval process and any disputes arising from that process between the operator and MSHA – be they pre- or post-deprivation of the operators' liberty and property interests.

73.    The only "process" of any kind provided to the Plaintiffs under the Mine Act with respect to ventilation plan approvals is an implied assurance that MSHA will consider a ventilation plan submitted for approval in good faith, and in a fair and timely manner, and

approve it if the plan is suitable to the conditions and the mining system of the coal mine for which the plan has been submitted.

74.     As alleged above, the Defendants have through a pattern and practice repeatedly failed to afford the Plaintiffs the process due under the Mine Act inasmuch as it has systematically, and without regard to the conditions and mining system of the individual mines, disapproved or failed to approve the Plaintiffs' ventilation plans unless and until the Plaintiffs have implemented the Defendants' demands that, *inter alia*, they not use scrubbers at their mines, they only use exhausting ventilation systems, they construct artificial ventilation controls that restrict air flow and thus inhibit the dilution of potentially hazardous methane and other air-gas mixtures, and they utilize one or more mine examiners in all circumstances to evaluate the effectiveness of their bleeder entries, even where an alternative means of evaluation would be safer and no less effective.  This has left the Plaintiffs with having to choose between refusing to implement the Defendants' demands, in which case they cannot operate and their employees must be put out of work, or implementing the Defendants' demands and obtaining approval of ventilation plans that are less protective of the safety and health of their miners.

75.     Under either scenario, the Plaintiffs have been, and will continue to be, deprived by the Defendants of constitutionally protected interests without due process of law.  The Defendants have deprived the Plaintiffs of such interests without affording the Plaintiffs the necessary opportunity to be heard.

76.     Accordingly, the Defendants have violated the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

### FOURTH CLAIM FOR RELIEF
#### *Ultra Vires Conduct*

77.     The Plaintiffs re-allege and incorporate by reference paragraphs 1-55.

78.    As stated above, the actions taken by the Defendants are in excess of their statutory authority and therefore *ultra vires*. The Defendants are not authorized by any provision of the Mine Act to deny the Plaintiffs their right (i) to the use of scrubbers, (ii) to design and implement blowing ventilation systems, (iii) to ventilate the gob areas of their mines without artificial ventilation controls that restrict air flow across inaccessible mined out areas and make the mine less safe for the miners, and (iv) to use methods of evaluating the effectiveness of their bleeder entries that do not require sending mine examiners into potentially hazardous areas of the mines, to help ventilate their underground coal mines and protect their miners against the hazards of methane gas or respirable coal dust and the consequent risk of Black Lung Disease.

## FIFTH CLAIM FOR RELIEF
### Due Process Clause, Fifth Amendment to the U.S. Constitution – Substantive Due Process

79.    The Plaintiffs re-allege and incorporate by reference paragraphs 1-55.

80.    The Due Process Clause of the Fifth Amendment to the U.S. Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law."

81.    The Plaintiffs have constitutionally protected interests in, *inter alia*:

- a safe and healthy work force (*i.e.*, their miners), for both their own sake and the sake of their miners, and such interests are directly affected by the suitability of their ventilation plans to the conditions and mining systems at their respective mines – if their ventilation plans are not suitable to the circumstances found at a particular mine, the Plaintiffs cannot be certain they are doing all they could to protect the safety and health of their miners;

- the economic viability of their mining operations, and such interests are directly affected by their obtaining timely MSHA approval of their ventilation

plans – without the Defendants' approval, the Plaintiffs' mines cannot operate, and their employees will be put out of work; and

- the right to develop and implement their own ventilation plans, provided they are consistent with prudent mining engineering and safety and health practices, suitable to the conditions and mining systems at their respective mines, and such interests are directly affected by the Defendants' arbitrary conduct such as refusing to approve a ventilation plan that is consistent with prudent mining engineering and safety and health practices suitable to the conditions and mining systems at those mines.

82.    As stated above, the Defendants have deprived the Plaintiffs of these constitutionally protected interests in the instances described.

83.    Accordingly, the Defendants have violated the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  The Defendants' actions depriving the Plaintiffs of their constitutionally protected interests were arbitrary, unjustified by any circumstance or legitimate governmental interest, and therefore lacked any rational basis and cannot stand.

### SIXTH CLAIM FOR RELIEF
**Administrative Procedure Act, 5 U.S.C. § 701, *et seq.***

84.    The Plaintiffs re-allege and incorporate by reference paragraphs 1-55.

85.    Each instance of the Defendants as described above denying the Plaintiffs the right to ventilate their respective mines in a manner consistent with prudent mining engineering and safety and health practices suitable to the conditions and mining systems at those mines constitutes a final agency action reviewable by this Court under the APA, 5 U.S.C. § 706.

86.     As alleged above, the Defendants have repeatedly and systematically refused to consider the conditions and mining systems of the Plaintiffs' mines in prohibiting the Plaintiffs from using scrubbers at their mines, prohibiting the Plaintiffs from using blowing ventilation systems, mandating the use of certain artificial ventilation controls that restrict air flow and thus inhibit the dilution of potentially hazardous methane and other air-gas mixtures, and mandating that the Plaintiffs utilize one or more mine examiners in all circumstances at their respective mines to evaluate the effectiveness of their bleeder entries, even where an alternative means of evaluation would be safer and no less effective.  Such a generic, one-size-fits-all approach to ventilation plan review is arbitrary, capricious, an abuse of discretion, and not in accordance with law inasmuch as, among other things: (a) the Defendants' actions in denying the Plaintiffs the right to ventilate their respective mines in a manner consistent with prudent mining engineering and safety and health practices suitable to the conditions and mining systems at those mines diminishes the safety and health of miners who previously benefited from the various provisions proposed by the Plaintiffs, such as the use of scrubbers, under the Plaintiffs' previously-approved ventilation plans, in violation of Mine Act § 101(a)(9), 30 U.S.C. § 811(a)(9); (b) the Defendants' actions are unconstitutional and in excess of statutory jurisdiction (*i.e.*, *ultra vires*) for the reasons alleged in the Third, Fourth, and Fifth Claims for Relief; and (c) the Defendants' actions fail to comply with the plan-approval criterion required by law, *i.e.*, they rely on a generic view of ventilation plans without regard to the conditions and the mining system of the coal mine for which the plan has been submitted, as required by the Mine Act.

87.     Because the actions of which the Plaintiffs complain and which provide the basis for APA review were *ultra vires*, they could not have been undertaken pursuant to MSHA's lawful Mine Act authority.

## SEVENTH CLAIM FOR RELIEF
### Declaratory Judgment, 28 U.S.C. § 2201

88.     The Plaintiffs re-allege and incorporate by reference paragraphs 1-55.

89.     The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare the Plaintiffs' legal rights where an actual controversy exists.

90.     As stated above, an actual controversy exists between the Plaintiffs and the Defendants to this dispute within the jurisdiction of this Court.

91.     For the reasons stated above, the Plaintiffs are entitled to a declaration that, consistent with their rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, they have a right under the Mine Act and the U.S. Constitution to a timely and fair consideration by MSHA of all ventilation plan submissions, with specific regard to the conditions and the mining system of the coal mine for which the plan was submitted, including a right to a timely decision approving the plan if it is consistent with prudent mining engineering and safety and health practices, or a timely decision disapproving of the plan, in which case they are also entitled to a reasonable, written explanation for the disapproval (as MSHA's regulations so provide, 30 C.F.R. § 75.370(c)(2)).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

(a)     Declare that the Defendants do not have the authority under the Mine Act to dictate ventilation plan provisions, that their plan approval authority is limited to reviewing the operator's ventilation plan for consistency with prudent mining engineering and safety and health practices suitable to the conditions and mining systems at a given mine, and that the Defendants may not lawfully deny or delay approval of a ventilation plan because they prefer a different way the plan could be developed with respect to one or more provisions as long as the plan as proposed by the operator is

consistent with prudent mining engineering and safety and health practices suitable to the conditions and mining systems at the given mine.

(b)    Declare that the Mine Act, inasmuch as it does not provide the Plaintiffs any recourse in the event MSHA denies or unreasonably delays approval of a submitted ventilation plan or adopts an arbitrary position with respect to the plan that is based on generic beliefs unrelated to the specific conditions or mining system at the mine or that, if implemented by the operator, would not improve or could jeopardize the health or safety of the miners, is unconstitutional in that it violates the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

(c)    Declare that the Plaintiffs have a constitutional right to a hearing on the merits of a ventilation plan submitted to MSHA for approval in the event MSHA denies or unreasonably delays approval of a submitted ventilation plan or adopts an arbitrary position with respect to the plan that is based on generic beliefs unrelated to the specific conditions or mining system at the mine or that, if implemented by the operator, could jeopardize the health or safety of the miners;

(d)    Declare that the Defendants, through their pattern and practice of refusing to allow the Plaintiffs' mines to implement any number of sound practices that are suitable to the conditions and mining systems at their respective mines – including, but not limited to, (i) the use of scrubbers, (ii) the right to design and implement blowing ventilation systems, (iii) the right to ventilate the gob areas of their mines without artificial ventilation controls that restrict air flow across inaccessible mined out areas and make the mine less safe for the miners, and (iv) the right to use methods of evaluating the effectiveness of their bleeder entries that do not require sending mine examiners into potentially

24

hazardous areas of the mines – violated the Plaintiffs' rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

(e)     Declare that the Defendants, through their pattern and practice of refusing to allow the Plaintiffs' mines to implement any number of sound practices that are suitable to the conditions and mining systems at their respective mines – including, but not limited to, (i) the use of scrubbers, (ii) the right to design and implement blowing ventilation systems, (iii) the right to ventilate the gob areas of their mines without artificial ventilation controls that restrict air flow across inaccessible mined out areas and make the mine less safe for the miners, and (iv) the right to use methods of evaluating the effectiveness of their bleeder entries that do not require sending mine examiners into potentially hazardous areas of the mines - have acted *ultra vires*.

(f)     Declare that the Plaintiffs have a right under the Mine Act and the Fifth Amendment to the U.S. Constitution (i) to the use of scrubbers, (ii) to design and implement blowing ventilation systems, (iii) to ventilate the gob areas of their mines without artificial ventilation controls that restrict air flow across inaccessible mined out areas and make the mine less safe for the miners, and (iv) to use methods of evaluating the effectiveness of their bleeder entries that do not require sending mine examiners into potentially hazardous areas of the mines, unless MSHA can demonstrate that such actions at a particular mine would diminish the health or safety of the miners in light of the specific conditions and mining system used at any such mine.

(g)     Order the Defendants to allow the Plaintiffs to (i) use scrubbers, (ii) design and implement blowing ventilation systems, (iii) ventilate the gob areas of their mines without artificial ventilation controls that restrict air flow across inaccessible mined out

areas and make the mine less safe for the miners, and (iv) use methods of evaluating the effectiveness of their bleeder entries that do not require sending mine examiners into potentially hazardous areas of the mines at the mines noted in this Complaint unless the Defendants can demonstrate that such actions would diminish the health or safety of the miners in light of the specific conditions and mining system used at any such mine.

(h)    Award the Plaintiffs their attorneys' fees and expenses related to this action; and

(i)    Grant such other relief to the Plaintiffs as the Court deems appropriate.

Dated:  June 22, 2010                    Respectfully submitted,

Timothy M. Biddle, D.C. Bar #89284
Thomas C. Means, D.C. Bar #254318
Daniel W. Wolff, D.C. Bar #486733
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
Phone:  202-624-2500
Fax:  202-628-5116

*Attorneys for Plaintiffs*

12107347 v.4